OPERATING ENGINEERS PENSION TRUST, Operating Engineers Health and Welfare Fund, Operating Engineers Vacation-Holiday Savings Trust & Operating Engineers Training Trust, Plaintiffs-Appellants/Cross-Appellees,

v.

SOULE STEEL COMPANY, Defendant-Appellee/Cross-Appellant.

Nos. 85–6008, 85–6066.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted, June 3, 1986.

Decided Aug. 19, 1986.

or in the 1984 Bankruptcy Code that suggest a reason to depart from the rule in *Shamrock Golf.*

Wayne Jett, Jett, Clifford, & Laquer, Los Angeles, Cal., for plaintiffs-appellants/cross-appellees.

Edward R. McGah, Jr., Irell & Manella, Los Angeles, Cal., for defendant-appellee/cross-appellant.

Before BOOCHEVER, NORRIS and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

The Operating Engineers Pension Trust and related trusts (Trusts) appeal from a grant of summary judgment in favor of employer Soule Steel (Soule). We reverse.

I

Defendant Soule, as a member of the Associated General Contractors of California (AGC) at all relevant times, was bound to observe all terms and conditions of the Master Labor Agreement (MLA) negotiated between the AGC and the International Union of Operating Engineers Local Union No. 12 (Local No. 12). The MLA and the resolutions interpreting it require that Soule pay fringe benefit contributions to the Trusts for every hour worked by an employee *dispatched by the union* who performs any work covered by the MLA, regardless of whether all of the work done was covered by the agreement.

Boni R. Anderson was dispatched as an operating engineer from the Local No. 12 hiring hall on March 5, 1982. Before that time Anderson worked for Soule only as an ironworker. After that date, he worked as an operating engineer only during two discrete periods: from March 8 to March 26, 1982, and from November 8, 1982 to March 5, 1983. At no time did Anderson perform both jobs within the same shift or payroll period. For the periods that Anderson worked as an ironworker, Soule paid fringe benefit contributions totaling $9950.69 to the Ironworkers Trusts pursuant to a collective bargaining agreement negotiated with the Ironworkers Union.

After discovering that no contributions had been paid by Soule for unreported hours worked by Anderson, and no payments would be paid, the Trusts filed this action under § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, and § 502 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132 to recover costs, unpaid contributions, and liquidated damages pursuant to the MLA. The district court granted summary judgment to Soule, holding that Soule did not

owe the Trusts fringe benefit contributions for the hours Anderson worked as an ironworker.

## II

We review the district court's grant of summary judgment pursuant to Fed.R. Civ.P. 56 *de novo. Ward v. United States Department of Labor*, 726 F.2d 516, 517 (9th Cir.1984).

■ The MLA vests the Labor Management Adjustment Board (LMAB) with binding authority to interpret the agreement and resolve disputes about the meaning of its terms. On July 26, 1972, the LMAB passed two resolutions. The "all hours" resolution states that:

[W]hen an employee has been dispatched by the Union to a Contractor and the employee performs any work whatsoever covered by the Agreement, the Contractor shall be obligated to pay fringe benefit contributions to the Trusts at the required rate for each and every hour worked by the employee or paid for by the Contractor....

The "dual union" resolution provides:

Therefore, be it resolved, that any employee dispatched by the Union under this Agreement shall perform only work covered by this Agreement, and fringe benefit contributions shall be payable on all hours worked by such employee or paid for by the Contractor;

Resolved further, that henceforth, any employee presently dispatched to a contractor by more than one union, shall perform only work in the craft of the union which most recently dispatched said employee, provided, however, that the Contractor may affirmatively designate in advance the craft in which such employee will perform work in the future....

This resolution explains that an employee's assignment to work not covered by the MLA does not alter an employer's obligation to the union which most recently dispatched him, even if contributions for those hours of work must be paid to another union.

In *Waggoner v. C & D Pipeline Co.*, 601 F.2d 456, 459 (9th Cir.1979) (*C & D Pipeline*), we held that interpretations of the MLA embodied in the LMAB's resolutions are binding on the parties. Soule violated the MLA agreement and the above resolutions interpreting it by assigning Anderson to work as an ironworker after he had been dispatched as an operating engineer, without notifying the union of his termination as an operating engineer. Soule had an obligation to report and pay contributions to the Trusts for all hours Anderson worked after his dispatch from Local No. 12. Had Soule notified the union, in accordance with the MLA, that Anderson had been terminated as an operating engineer and was now working as an ironworker, it could have avoided the double liability resulting here.[1]

■ Soule argues that the MLA is not intended to reach employees who perform work in another craft for extended discrete periods. Rather, Soule claims that the "dual union" resolution only applies to prevent employees from working in two different crafts during the same shift or payroll period as in other cases relied on by the Trusts. *See Waggoner v. William Radkovich Co.*, 620 F.2d 206, 207 (9th Cir.1980); *Burke v. Lenihan*, 606 F.2d 840, 841 (9th Cir.1979); *C & D Pipeline*, 601 F.2d at 457–58. We disagree. Neither the MLA nor the resolution specifically excludes discrete periods of employment in non-operating engineer tasks from coverage. Under our previous decisions, the plain language of the resolutions controls, and Soule owes contributions to the Trusts for all hours worked by Anderson after he was dispatched by Local 12.

1. We also note that Soule did not seek Anderson's dispatch by the union when it re-employed him as an operating engineer in November, 1982 following his work as an ironworker, an omission which belies its claim that Anderson's work during the intervening lapse of time was not covered by the agreement and that payments were therefore not due the union for that time.

## III

Soule claims that the Trusts are collaterally estopped from relitigating issues of Master Labor Agreement interpretation already decided against them by previous final judgments. Because the cases Soule relies on are factually distinguishable, we reject this contention.

We remand to the district court and instruct it to award the Trusts the reasonable attorney's fees and costs to which they are entitled under 29 U.S.C. § 1132(g)(2), *Operating Engineers Pension Trust v. Reed*, 726 F.2d 513, 514 (9th Cir.1984), as well as liquidated damages.

REVERSED AND REMANDED.[2]

---

2. Soule also cross-appeals from a denial of its request for attorneys' fees. Because Soule is not a prevailing party, it is not entitled to attorneys' fees under 29 U.S.C. § 1451(e).